**Daniel Berke** (db1855)
Berke & Associates PLLC
203 East 72nd Street, Suite 6A
New York, NY 10021
Tel: (917) 747-4263
Email: danberke100@gmail.com
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BILLY FIELDS**, | **COMPLAINT** |
| Plaintiff, | |
| -against- | |
| **1994 CHICKEN CORP., 1994 KFC LLC,** | **CASE NO.: 25-cv-4876** |
| Defendants. | **JURY DEMANDED** |

## CIVIL COMPLAINT

BILLY FIELDS (the "Plaintiff"), as and for his complaint against 1994 CHICKEN CORP. and 1994 KFC LLC (the "Defendants"), respectfully brings before the Court the below allegations.

## STATEMENT OF PLAINTIFF'S CLAIMS

1. This is an action under Title III of the Americans with Disabilities Act of 1990 (the "ADA") to enjoin unlawful discrimination based on disability. Plaintiff was discriminated against on the basis of disability and was denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the place of public accommodation owned, leased, leased to, controlled, managed, or operated, by Defendants.

2. Plaintiff files this action complaining of the violations of Title III of the ADA. This action is brought under ADA 42 U.S.C. §12182, §12183, and §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964 – the ADA's Accessibility Guidelines, 28 C.F.R. Part 36, subpart D, the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 C.F.R. Part 1191, appendices B and D, the 1991 ADA Standards for Accessible Design ("1991 Standards"), the 2010 ADA Standards for Accessible Design ("2010 Standards"), the Building Code of the State of New York, as well as New York State Civil Rights Law §40-c and §40-d, New York State Human Rights Law §296, and New York City Human Rights Law [Administrative Code] §8-107.

3. Plaintiff seeks compensatory and statutory damages, declaratory and injunctive reliefs, attorney's fees, expert fees, and costs against Defendants, as well as such other relief as the Court deems to be just and proper.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §451, §1331, §1337, §1343, §2201, §2202, and 42 U.S.C.A. §12181, *et seq.*, as it involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.

5. This Court has supplemental jurisdiction over Plaintiff's allegations arising from Defendants' state law violations pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because all events, or omissions, giving rise to this action, and alleged herein, occurred in this district.

2

7.  Venue is also proper in this district because Defendants' property, the public accommodation, which is the subject of this action, is both located in, and does business within, this judicial district.

## PARTIES

8.  At all relevant times herein, Plaintiff is and has been a resident of New York County, New York.

9.  Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. §12131, who is expressly authorized to bring this action under §308 of the ADA, 42 U.S.C. §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964.

10. All references to Popeyes in this complaint are made regarding the fast-food restaurant Popeyes, 1994 Atlantic Avenue, Brooklyn, NY 11233 ("Popeyes").

11. All references to the parking lot in this Complaint are made regarding the parking lot located at 1994 Atlantic Avenue, Brooklyn, NY 11233 that is for customers of Popeyes (the "Parking Lot").

12. Plaintiff's complaint stems from the discrimination he experienced in Popeyes's Parking Lot, where he had difficulties maneuvering his wheelchair due to the architectural barriers that frustrated his access to the fast-food restaurant, in which he wanted to buy food.

13. The Office of the City Register of the New York City Department of Finance maintains a deed record showing that 1994 KFC LLC is the owner of the real property identified on the NYC Tax Map of Kings County as Block 1339, Lots 49, 52, 54, and 55 (the "Commercial Lots"), located at 1994 Atlantic Avenue, Brooklyn, NY 11233.

14. Popeyes and the Parking Lot are located on the Commercial Lots, at 1994 Atlantic Avenue, Brooklyn, NY 11233.

15. At all relevant times herein, Defendant 1994 CHICKEN CORP. operates Popeyes.

16. At all relevant times herein, Defendant 1994 CHICKEN CORP. leases the building, in which Popeyes is located, from the owner of that building, Defendant 1994 KFC LLC

17. At all relevant times herein, Defendant 1994 CHICKEN CORP. leases the Commercial Lots, on which Popeyes is located, from the owner of the lots, Defendant 1994 KFC LLC

18. At all relevant times herein, and after January 26, 1992, Defendant 1994 CHICKEN CORP. controlled Popeyes.

19. At all relevant times herein, and after January 26, 1992, Defendant 1994 CHICKEN CORP. managed Popeyes.

20. At all relevant times herein and after January 26, 1992, Defendant 1994 CHICKEN CORP. maintained Popeyes.

21. At all relevant times herein and after January 26, 1992, Defendant 1994 CHICKEN CORP. designed Popeyes.

22. At all relevant times herein, and after January 26, 1992, Defendant 1994 CHICKEN CORP. built Popeyes.

23. At all relevant times herein, and after January 26, 1992, Defendant 1994 CHICKEN CORP. constructed Popeyes.

24. At all relevant times herein, and after January 26, 1992, Defendant 1994 CHICKEN CORP. erected Popeyes.

25. At all relevant times herein and since January 26, 1992, Defendant 1994 CHICKEN CORP. altered Popeyes.

26. At all relevant times herein and since January 26, 1992, Defendant 1994 CHICKEN CORP. operated Popeyes.

27. At all relevant times herein, and after January 26, 1992, Defendant 1994 CHICKEN CORP. maintained control over the Parking Lot.

28. At all relevant times herein, and after January 26, 1992, Defendant 1994 CHICKEN CORP. managed the Parking Lot.

29. At all relevant times herein, and after January 26, 1992, Defendant 1994 CHICKEN CORP. maintained the Parking Lot.

30. At all relevant times herein, and after January 26, 1992, Defendant 1994 CHICKEN CORP. designed the Parking Lot.

31. At all relevant times herein, and after January 26, 1992, Defendant 1994 CHICKEN CORP. built the Parking Lot.

32. At all relevant times herein, and after January 26, 1992, Defendant 1994 CHICKEN CORP. constructed the Parking Lot.

33. At all relevant times herein, and after January 26, 1992, Defendant 1994 CHICKEN CORP. erected the Parking Lot.

34. At all relevant times herein, and after January 26, 1992, Defendant 1994 CHICKEN CORP. altered the Parking Lot.

35. At all relevant times herein, and after January 26, 1992, Defendant 1994 CHICKEN CORP. operated the Parking Lot.

36. At all relevant times herein, and after January 26, 1992, Defendant 1994 CHICKEN CORP. has been operating the Parking Lot.

37. At all relevant times herein, Defendant 1994 KFC LLC owns the Commercial Lots.

38. At all relevant times herein, and after January 26, 1992, Defendant 1994 KFC LLC controlled the Parking Lot.

39. At all relevant times herein, and after January 26, 1992, Defendant 1994 KFC LLC managed the Parking Lot.

40. At all relevant times herein, and after January 26, 1992, Defendant 1994 KFC LLC maintained the Parking Lot.

41. At all relevant times herein, and after January 26, 1992, Defendant 1994 KFC LLC designed the Parking Lot.

42. At all relevant times herein, and after January 26, 1992, Defendant 1994 KFC LLC built the Parking Lot.

43. At all relevant times herein, and after January 26, 1992, Defendant 1994 KFC LLC constructed the Parking Lot.

44. At all relevant times herein, and after January 26, 1992, Defendant 1994 KFC LLC altered the Parking Lot.

45. At all relevant times herein, and after January 26, 1992, Defendant 1994 KFC LLC operated the Parking Lot.

46. At all relevant times herein, Popeyes operates out of a building located on the Commercial Lots.

47. At all relevant times herein, Popeyes is in a building constructed on the Commercial Lots.

48. At all relevant times herein, Popeyes is in a building that was built on the Commercial Lots.

49. At all relevant times herein, Popeyes's customers park their vehicles in the Parking Lot.

50. At all relevant times herein, Popeyes's customers are permitted to park their vehicles in the Parking Lot.

51. At all relevant times herein, 1994 CHICKEN CORP. operates Popeyes in the building owned by Defendant 1994 KFC LLC, located at 1994 Atlantic Avenue, Brooklyn, NY 11233.

52. At all relevant times herein, Defendant 1994 KFC LLC leases the Commercial Lots to Defendant 1994 CHICKEN CORP.

53. At all relevant times herein, Defendant 1994 CHICKEN CORP. leases the Commercial Lots from Defendant 1994 KFC LLC.

54. At all relevant times herein, Popeyes and the Parking Lot are the subjects of this lawsuit and are hereinafter referred to both by their name and as the "Subject Facility."

55. 1994 CHICKEN CORP. is an American for-profit corporation organized under the laws of New York State.

56. 1994 CHICKEN CORP. is licensed to conduct business in the State of New York by the New York State Department of State ("NYS DOS").

57. NYS DOS maintains entity information for 1994 CHICKEN CORP. in its Corporation and Business Entity Database ("CBED").

58. NYS DOS CBED maintains a corporate record for 1994 CHICKEN CORP.

59. NYS DOS CBED's corporate record for 1994 CHICKEN CORP. states that its chief executive officer's name and address are the following: Lamir Sultanzada, 218-14 Jamaica Avenue, 2nd Fl., Queens Village, NY 11428.

60. NYS DOS CBED's corporate record for 1994 CHICKEN CORP. states that its principal executive office is located at 218-14 Jamaica Avenue, 2nd Fl., Queens Village, NY 11428.

61. NYS DOS CBED's corporate record for 1994 CHICKEN CORP. does not list information regarding its registered agent.

62. 1994 CHICKEN CORP. does not have a registered agent.

63. The name and address of 1994 CHICKEN CORP.'s registered agent are not known to Plaintiff.

64. NYS DOS CBED's corporate record for 1994 CHICKEN CORP. does not state the entity's primary location name and address.

65. NYS DOS CBED record for 1994 CHICKEN CORP. states that "the Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery," when served on the Secretary of State as agent, is 1994 Chicken Corp., 218-14 Jamaica Avenue, 2nd Fl., Queens Village, NY 11428.

66. The Office of the City Register of the New York City Department of Finance maintains a deed record showing that the Commercial Lots, on which Popeyes, and the adjacent Parking Lot are located, are owned by 1994 KFC LLC.

67. At all relevant times herein, Defendant 1994 KFC LLC was, and currently is, the owner of the Commercial Lots in Kings County on which the Subject Facility is located.

68. 1994 KFC LLC is an American for-profit limited liability company organized under the laws of New York State.

69. Defendant 1994 KFC LLC is licensed to conduct business in the State of New York by the NYS DOS.

70. NYS DOS maintains entity information for Defendant 1994 KFC LLC in its CBED.

71. NYS DOS CBED maintains a company record for Defendant 1994 KFC LLC.

72. The company record for Defendant 1994 KFC LLC contains no information regarding its chief executive officer's name and address.

73. The corporate record for Defendant 1994 KFC LLC contains no information regarding its principal executive office.

74. NYS DOS CBED's corporate record for 1994 KFC LLC contains no information regarding its registered agent.

75. 1994 KFC LLC does not have a registered agent.

76. The name and address of 1994 KFC LLC's registered agent are not known to Plaintiff.

77. NYS DOS CBED's corporate record for 1994 KFC LLC does not state the entity primary location's name and address.

78. The company record for Defendant 1994 KFC LLC states that the post office address, to which the Secretary of State shall mail a copy of any process against the entity served upon the Secretary of State by personal delivery is the following: 1994 KFC LLC, 549 Empire Blvd., Suite 100, Brooklyn, NY 11225.

79. The Office of the City Register of the New York City Department of Finance maintains a deed record showing that 1994 KFC LLC is located at 549 Empire Blvd., Brooklyn, NY 11225.

80. At all relevant times herein, and upon information and belief, Defendant 1994 CHICKEN CORP. entered into a real property lease with 1994 KFC LLC, according to which Defendant 1994 CHICKEN CORP. is responsible for maintenance of the Parking Lot.

81. At all relevant times herein, and upon information and belief, Defendant 1994 CHICKEN CORP. entered into a real property lease with 1994 KFC LLC, according to which, Defendant 1994 CHICKEN CORP. is responsible for ensuring that the Parking Lot complies with the 1991 ADA Standards.

82. At all relevant times herein, and upon information and belief, Defendant 1994 CHICKEN CORP. entered into a real property lease with Defendant 1994 KFC LLC, pursuant to which, Defendant 1994 CHICKEN CORP. is responsible for ensuring that the Parking Lot complies with the 2010 ADA Standards.

83. At all relevant times herein, and upon information and belief, Defendant 1994 CHICKEN CORP. entered into a real property lease with Defendant 1994 KFC LLC, pursuant to which 1994 CHICKEN CORP. is responsible for ensuring that the Parking Lot complies with 28 C.F.R. §36.201.

84. At all relevant times herein, and upon information and belief, Defendant 1994 CHICKEN CORP. entered into a real property lease with Defendant 1994 KFC LLC, pursuant to which Defendant 1994 CHICKEN CORP. is responsible for ensuring that the Parking Lot complies with the New York State Civil Rights laws.

85. At all relevant times herein, and upon information and belief, Defendant 1994 CHICKEN CORP. entered into a real property lease with Defendant 1994 KFC LLC, pursuant to which Defendant 1994 CHICKEN CORP. is responsible for ensuring that the Parking Lot complies with the New York State Human Rights laws.

86. At all relevant times herein, and upon information and belief, Defendant 1994 CHICKEN CORP. entered into a real property lease with Defendant 1994 KFC LLC, pursuant to which Defendant 1994 CHICKEN CORP. is responsible for ensuring that the Parking Lot complies with the New York City Human Rights laws.

87. Notwithstanding any contractual provisions of the real property lease referred to in the above paragraphs, the landlord and owner of the property, Defendant 1994 KFC LLC,

which houses the public accommodation, cannot escape liability for the failure of its tenant Defendant 1994 CHICKEN CORP. to comply with the ADA.

88. Notwithstanding any contractual provisions of the real property lease referred to in the above paragraphs, the landlord and owner of the property, Defendant 1994 KFC LLC, which houses the public accommodation, cannot escape liability for the failure of its tenant to comply with the ADA.

89. Notwithstanding any contractual provisions of the real property lease referred to in the above paragraphs, the landlord and owner of the property, Defendant 1994 KFC LLC, which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the New York State Civil Rights laws.

90. Notwithstanding any contractual provisions of the real property lease referred to in the above paragraphs, the landlord and owner of the property, Defendant 1994 KFC LLC, which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the New York State Human Rights laws.

91. Notwithstanding any contractual provisions of the real property lease referred to in the above paragraphs, the landlord and owner of the property, Defendant 1994 KFC LLC, which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the New York City Human Rights laws.

92. At all times relevant herein, Defendants are jointly and severally liable for the design of the Parking Lot.

93. At all times relevant herein, Defendants are jointly and severally liable for the construction of the Parking Lot.

94. At all times relevant herein, Defendants are jointly and severally liable for the maintenance of the Parking Lot.

95. At all times relevant herein, Defendants are jointly and severally liable for the management of the Parking Lot.

96. At all times relevant herein, Defendants are jointly and severally liable for the control of the Parking Lot.

97. At all times relevant herein, Defendants are jointly and severally liable for the alteration of the Parking Lot.

98. At all times relevant herein, Defendants are jointly and severally liable for the operation of the Parking Lot.

99. After January 26, 1992, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, and at all relevant times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or altered and/or made alterations to the Parking Lot.

100.    After March 15, 2012, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, and at all relevant times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or placed markings on, and/or placed signs on, and/or maintained, and/or altered and/or made alterations to the Parking Lot.

101.    After January 26, 1992, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, and at all relevant times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or

erected, and/or painted, and/or placed markings on, and/or placed signs on, and/or maintained, and/or made alterations to Popeyes.

102.     After March 15, 2012, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, and at all relevant times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or placed markings on, and/or placed signs on, and/or maintained, and/or made alterations to Popeyes.

103.     Popeyes is a fast-food restaurant and is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104 Place of public accommodation (2), the New York State Human Rights Law §292(9), and the New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

## STATUTORY SCHEME

104.     On July 26, 1990, Republican President George H. W. Bush, who himself subsequently became disabled and had to rely on a wheelchair later in his life, signed the ADA into law, which extended essential civil rights to individuals with disabilities.

105.     That law had been championed by Senator Robert J. Dole, who himself had suffered from a significant disability, which resulted from the wounds he has received while fighting in Italy during liberation of the world from the fascists' dictatorship during World War II.

106.     On that day, July 26, 1990, the United States of America enacted the ADA, establishing extremely important and incontrovertibly indispensable civil rights for individuals with disabilities, including the right to full and equal enjoyment of goods, services, facilities, privileges, and access to places of public accommodation.

107.    Congress made the following findings:

  a.  Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

  b.  Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

  c.  Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodation, education, transportation, communication, recreation, institutionalization, health services, voting and access to public services;

  d.  Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, activities, benefits, jobs or other opportunities; and

e.  The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (8)

108.    Furthermore, Congress also explicitly stated that the ADA had to:

a.  Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

b.  Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c.  Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4)

109.    Furthermore, pursuant to 42 U.S.C. §12182 and 28 C.F.R. §36.201(a), the congressional intent was to ensure that no place of public accommodation may discriminate against an individual on the basis of such individual's disability, with regard to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at that place of public accommodation.

110.    Congress provided commercial businesses at least 18 months from enactment to make their facilities compliant with the regulations in the ADA. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993, if a defendant has ten (10), or fewer, employees and gross receipts of $500,000, or less. 42 U.S.C. §12183; 28 C.F.R. §36.508(a).

111.    The 2000 United States census indicates that in the civilian non-institutionalized population more than 49.7 million people in the United States have a disability. The census also indicates that more than 1.39 million New Yorkers have a mobility disability.

112.    ADA 42 U.S.C. §12182(a), the New York State Civil Rights laws, the New York State Human Rights laws, and the New York City Human Rights laws recognize individuals with disabilities as a protected class.

113.    It is unlawful for a private entity which owns, leases, leases to, or operates a place of public accommodation, to discriminate against an individual with a disability. 42 U.S.C. §12182(b)(1)(A), 28 C.F.R. §36.201(a) and (b).

114.    Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the ADAAG, 28 C.F.R. §36, under which it may

obtain civil penalties of up to \$110,000 for the first violation and \$150,000 for any subsequent violation.

115.     The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, each have a duty to comply with the ADA, 28 C.F.R. §36.201(a) and (b), the New York State Civil Rights laws, and the New York State and City Human Rights laws.

116.     Popeyes is a fast-food restaurant, a business which affects interstate commerce within the meaning of the ADA, 42 U.S.C. §12181(7)(B).

117.     Popeyes affects interstate commerce within the meaning of 28 C.F.R. §36.104 Place of public accommodation (2).

118.     Regardless of any contractual provisions stating otherwise, the landlord and owner of real property, which houses the public accommodation, cannot escape liability for the failure of its tenant to comply with the ADA, 28 C.F.R. §36.201, the New York State Civil Rights laws, and the New York State and City Human Rights laws.

119.     Discriminatory intent is not required to establish liability under the ADA.

120.     Discriminatory intent is not required to establish liability under the New York State Civil Rights Laws.

121.     Discriminatory intent is not required to establish liability under the New York State Human Rights laws.

122.     Discriminatory intent is not required to establish liability under the New York City Human Rights laws.

123.     One type of disability discrimination is the failure of an owner, or an operator, of a public accommodation to remove those architectural barriers, removal of which is readily achievable.

> A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.

> 28 C.F.R. §36.304

124.     At all relevant times herein, Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, had a duty to remove architectural barriers. They failed to remove them. Remediation of these barriers was readily achievable. These architectural barriers denied an individual with a disability, including Plaintiff, the opportunity to participate in, or benefit from, services or accommodations at Popeyes, in violation of 28 C.F.R. §36.304.

125.     At all relevant times herein, removal of architectural barriers at Popeyes, and/or the Parking Lot, has been and is readily achievable by Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC.

126.     At all relevant times herein, Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, had a duty to remove architectural barriers for disabled individuals that exist in the Parking Lot, but failed to remove them, even though it has been and is readily achievable to do so.

127.     The New York City Department of Buildings ("DOB") maintains records regarding construction and alterations of buildings located in Kings County.

128.     At all relevant times herein, and upon information and belief, Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations to the primary function areas of Popeyes, and/or the Parking Lot, after January 26, 1992.

129.     At all relevant times herein, and upon information and belief, Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations to the primary function areas of Popeyes, and/or the Parking Lot, after March 15, 2012.

130.     At all relevant times herein, and upon information and belief, Defendant 1994 CHICKEN CORP. had a duty to make the path of travel to Popeyes readily accessible to the maximum extent feasible for individuals with disabilities and had failed to do so.

131.     At all relevant times herein, and upon information and belief, Defendant 1994 KFC LLC had a duty to make the path of travel to Popeyes readily accessible to the maximum extent feasible for individuals with disabilities and had failed to do so.

132.     At all relevant times herein, Defendants 1994 CHICKEN CORP., and/or 1994 KFC LLC, had a duty to do so and failed to spend up to 20% of the costs of alterations made to Popeyes, and/or the Parking Lot in order to make the path of travel from the Parking Lot to Popeyes readily accessible to the maximum extent feasible for individuals with disabilities so as to comply with the 1991 ADA Standards and/or the 2010 ADA Standards.

133.     Plaintiff is informed and believes, and therefore alleges, that construction work was performed in the Parking Lot after March 15, 2012.

134.     Plaintiff is informed and believes, and therefore alleges, that the Parking Lot was modified after March 15, 2012.

135.     Plaintiff is informed and believes, and therefore alleges, that the Parking Lot has undergone alterations after March 15, 2012.

136.    Plaintiff is informed and believes, and therefore alleges, that alterations were made to the Parking Lot after March 15, 2012.

137.    Plaintiff is informed and believes, and therefore alleges, that after March 15, 2012, the Parking Lot was paved, and/or re-paved, and/or painted, and/or placed signs on, and/or markings were placed on it, and/or altered.


138.    "'[D]iscrimination' includes, with respect to a facility or part thereof that is altered by, on behalf [**12] of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, *a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities*, including individuals who use wheelchairs."

Roberts v. Royal Atl. Corp., 542 F3d 363, 368 [2d Cir 2008])


139.    "Where the entity is undertaking an alteration that affects or could affect usability of or *access to an area of the facility containing a primary function*, the entity shall also make the alterations in such a manner that, to *the maximum extent feasible, the path of travel* to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities

> where such alterations to the path of travel or the bathrooms,
> telephones, and drinking fountains serving the altered area are
> *not disproportionate to the overall alterations* in terms of cost
> and scope (as determined under criteria established by the
> Attorney General). 42 U.S.C. § 12183(a)(2) (emphasis added)."
>
> Id.

140.    "We must therefore first determine whether a challenged facility (or part thereof) has been "altered" in "a manner that affects or could affect its usability." Id.

141.    ""If alterations have been made, a defendant "discriminates" if those altered areas – and paths of travel to altered areas that "contain a primary function" – are not made readily accessible to disabled individuals "to the maximum extent feasible."" Id.

142.    "Even in the absence of alterations, a defendant nonetheless "discriminates" if it fails to remove any existing barriers to accessibility where such removal "is readily achievable."" Id. § 12182(b)(2)(A)(iv). Roberts v. Royal Atl. Corp., 542 F3d 363, 369 [2d Cir 2008]

143.    Defendant 1994 CHICKEN CORP. made alterations to, and/or paved, and/or re-paved, and/or painted, and/or re-painted, and/or made markings on the Parking Lot after March 15, 2012.

144.    Defendant 1994 CHICKEN CORP. made alterations to the Parking Lot after March 15, 2012, and did not make path of travel from the Parking Lot to Popeyes readily accessible to the maximum extent feasible for individuals with disabilities, and failed to make it compliant with the 1991 ADA Standards, and/or the 2010 ADA Standards.

145.    Defendant 1994 KFC LLC made alterations, and/or paved, and/or re-paved, and/or painted, and/or re-painted, and/or made markings on the Parking Lot after March 15, 2012.

146.    Defendant 1994 KFC LLC made alterations to the Parking Lot after March 15, 2012, but failed to make the path of travel from the Parking Lot to Popeyes readily accessible to the maximum extent feasible for individuals with disabilities, as well as failed to make it compliant with the 1991 ADA Standards, and/or the 2010 ADA Standards.

147.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or painted, and/or paved, and/or re-paved, and/or made markings on the Parking Lot after January 26, 1992.

148.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or re-paved, and/or made markings on the Parking Lot in 1991.

149.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or re-paved, and/or made markings on the Parking Lot in 1992.

150.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or re-paved, and/or made markings on the Parking Lot in 1993.

151.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or re-paved, and/or made markings on the Parking Lot in 1994.

152.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 1995.

153.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 1996.

154.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 1997.

155.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 1998.

156.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 1999.

157.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2000.

158.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2001.

159.     Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2002.

160.     Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2003.

161.     Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2004.

162.     Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2005.

163.     Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2006.

164.     Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2007.

165.     Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2008.

166.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2009.

167.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2010.

168.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2011.

169.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2012.

170.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2013.

171.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2014.

172.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2015.

173.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2016.

174.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2017.

175.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2018.

176.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2019.

177.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2020.

178.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2021.

179.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2022.

180.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2023.

181.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2024.

182.    Defendant 1994 CHICKEN CORP., and/or Defendant 1994 KFC LLC, made alterations, and/or placed signs on, and/or painted, and/or paved, and/or repaved, and/or made markings on the Parking Lot in 2025.

183.    At all relevant times herein, Defendants failed to remediate architectural barriers for individuals with disabilities that existed in the Parking Lot after January 26, 1992, when remediations were readily achievable.

184.    At all relevant times herein, Defendants failed to remediate architectural barriers for individuals with disabilities that existed in the Parking Lot after March 15, 2012, when remediations were readily achievable.

185.    At all relevant times herein, Defendants failed to remediate architectural barriers for individuals with disabilities that existed in the Parking Lot after March 15, 2012, when these architectural barriers violated the 1991 ADA Standards, and/or the 2010 ADA Standards.

186.    After March 15, 2012, Defendants failed to make the Parking Lot readily accessible to the maximum extent feasible for individuals with disabilities.

## FACTUAL ALLEGATIONS AND FIRST CAUSE OF ACTION

### Plaintiff's Background

187.     Plaintiff has been diagnosed by a physician as having suffered ischemia. He suffered right-sided hemiparesis, which caused nerve damage, and made it difficult for him to stand and balance his body weight, which resulted in an inability to walk.

188.     Plaintiff's physician prescribed him a motorized mobility scooter.

189.     Plaintiff obtained the motorized mobility scooter and uses it for all activities requiring mobility.

190.     For Plaintiff to safely use his motorized mobility scooter, routes connecting accessible spaces and all features, goods and services of a facility must be level, properly sloped, sufficiently wide and without cracks, holes or other hazards that can pose danger of tipping, catching wheels, or falling.

191.     Plaintiff is "disabled" under the statute, which in pertinent part states:

> *Disability* means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual…. The phrase *major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.
>
> 28 C.F.R. §36.104 (italics in original).

192.     The Parking Lot adjacent to Popeyes is used by its customers.

193.     There are two accessible parking spaces in the Parking Lot.

194.        There is an access aisle in the Parking Lot.

195.        The access aisle in the Parking Lot is located between the two accessible parking spaces.

196.        Plaintiff cannot walk and must use his motorized mobility scooter to enter and exit an accessible van.

197.        Plaintiff lives on Manhattan's Upper West Side.

198.        Plaintiff lived on Manhattan's Upper West Side for approximately seven years.

199.        Plaintiff visits his friends in Brooklyn.

200.        Plaintiff regularly shops in Brooklyn.

201.        Plaintiff visits parks and other attractions in Brooklyn.

202.        Popeyes is in Ocean Hill, Brooklyn, and/or Brownsville, Brooklyn.

203.        Plaintiff lives approximately 20 miles away from Popeyes.

204.        Plaintiff lives approximately one hour away from Popeyes by an accessible van.

205.        Plaintiff uses his scooter and travels, shops in stores and goes to restaurants in Manhattan, Brooklyn, Bronx, Queens, and in other boroughs of New York City.

206.        Plaintiff uses his motorized mobility scooter, travels, shops in stores and goes to restaurants in Brooklyn neighborhoods, including Ocean Hill, Brownsville, Crown Heights, Bedford-Stuyvesant, Bushwick, Prospect Park, Lefferts Gardens, Prospect Heights, Clinton Hill, and New Lots among others.

207.        Plaintiff uses his scooter, travels, shops in stores and goes to restaurants in neighborhoods throughout the five New York City boroughs.

208.        Plaintiff often visits these neighborhoods in an accessible van.

209.        Plaintiff often visits these neighborhoods by subway.

210.      Plaintiff takes trips to and visits Brooklyn, where he meets with friends.

211.      Plaintiff visits Brooklyn approximately once per month.

212.      Plaintiff has been visiting Brooklyn for over ten years.

213.      During his visits to Brooklyn Plaintiff meets with friends who live in Brooklyn.

214.      Plaintiff shops in Brooklyn.

215.      Plaintiff dines in various neighborhoods throughout Brooklyn.

216.      Plaintiff often visits Brooklyn parks, including Highland Park, Brooklyn Botanic Center, Prospect Park Zoo, Prospect Park, and the Green-Wood Cemetery among others.

217.      Plaintiff bought food in Popeyes in 2024.

218.      Plaintiff bought food in Popeyes in 2025.

219.      Plaintiff intends to continue buying food in Popeyes in 2025.

220.      Plaintiff intends to continue buying food in Popeyes in 2026.

221.      Plaintiff intends to continue buying food in Popeyes in the future.

222.      In August 2025, Plaintiff arranged for a trip in an accessible van and travelled in it to Popeyes.

223.      In August 2025, the driver of the accessible van dropped off Plaintiff in the accessible space in the Parking Lot adjacent to Popeyes.

224.      At all relevant times herein, Plaintiff had difficulties maneuvering his motorized mobility scooter on the steep slope of the accessible space in the Parking Lot.

225.      At all relevant times herein, Plaintiff had difficulties maneuvering his motorized mobility scooter on the steep access aisle of the Parking Lot.

226.     At all relevant times herein, Plaintiff had difficulties maneuvering his motorized mobility scooter within an accessible space of the Parking Lot because the accessible space had a steep slope.

227.     At all relevant times herein, Plaintiff had difficulties maneuvering his motorized mobility scooter within an access aisle of the Parking Lot because that aisle had a steep slope.

228.     At all relevant times herein, Plaintiff encountered architectural barriers in the Parking Lot and due to them, he left frustrated and disappointed.

229.     At all relevant times herein, the Parking Lot was designed by Defendants, who did not have Plaintiff and his needs in mind, did not accommodate his disabilities, and did not facilitate his access to Popeyes.

230.     At all relevant times herein, Defendants discriminated against Plaintiff by denying him a safe path of travel from the Parking Lot to Popeyes.

231.     At all relevant times herein, Defendants constructed the Parking Lot with disregard of the accessibility requirements of the ADA and thereby they both failed to accommodate Plaintiff and his access to Popeyes.

**Plaintiff Intends to Return to Popeyes**

232.     Popeyes is in Ocean Hill, and/or Brownsville, Brooklyn, NY.

233.     Popeyes is approximately 20 miles from Plaintiff's home on the Upper West side in Manhattan.

234.     Plaintiff lives approximately one hour away from Popeyes by an accessible van.

235.     Plaintiff intends to visit and shop in Popeyes in the future as soon as the architectural barriers are removed.

236.     Plaintiff intends to visit Popeyes again in the future when he visits Broadway Junction, buy food in it, and enjoy its services as soon as the architectural barriers are removed.

**Plaintiff is a Tester**

237.     Plaintiff is an advocate of the rights of disabled persons and is a tester for the purpose of asserting his civil rights.

238.     Plaintiff visits places of public accommodation to determine whether they are compliant with the ADA.

239.     Completely independent of his personal desire to have access to Popeyes free of illegal barriers to access, Plaintiff is a tester for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations.

240.     As a tester, Plaintiff visits public accommodations and purposely encounters barriers to access.

241.     Plaintiff purposely tests barriers to access in public accommodations to determine whether they are unlawful.

242.     When Plaintiff determines that barriers to access are unlawful, he initiates legal action against an owner, operator, lessor, or lessee of a public accommodation to end discrimination.

243.     Following completion of legal action, Plaintiff intends to return to the same place of public accommodation to ensure its compliance with the ADA.

244.     As a tester, Plaintiff visited Popeyes to encounter architectural barriers to access.

245.     As a tester, Plaintiff personally encountered the architectural barriers in the Parking Lot.

246.     Plaintiff visited Popeyes, bought food in it, and encountered ADA violations in the Parking Lot.

247.     Plaintiff encountered the above-mentioned ADA violations during his visit to Popeyes.

248.     Plaintiff encountered the aforementioned ADA violations in the Parking Lot.

249.     Following conclusion of this lawsuit, Plaintiff intends to return to Popeyes as both a customer, who wants to buy food in it, and as a tester to determine whether Defendants remediated their ADA violations.

250.     Plaintiff's motivation to return to Popeyes in part stems from his desire to utilize ADA litigation to make his community more accessible for him and other disabled individuals, who cannot visit it because of the architectural barriers in its Parking Lot.

251.     Plaintiff pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court, including returning to Popeyes as soon as it is accessible, so that an injunction can be issued by this Court upon Defendants, ordering them to remediate the ADA violations in the Parking Lot.

252.     Following conclusion of this lawsuit, Plaintiff intends to visit Popeyes at least twice a year to ensure that Defendants comply with the ADA and to buy food in it.

253.     Plaintiff is confident that Defendants will not remediate the ADA violations in the Parking Lot without the Court's intervention.

254.     Plaintiff will continue to suffer discrimination without the Court's intervention.

255.     Plaintiff will enforce the injunction once it is issued by the Court.

## Violations of Title III in the Subject Facility

256.     Due to the unlawful architectural barriers in the Parking Lot, Plaintiff did not have an accessible path of travel from it to Popeyes that complied with the ADA requirements, had difficulties with buying food at the fast-food restaurant, and suffered an injury in fact.

257.     Since January 26, 1992, Defendants failed to remove architectural barriers for disabled individuals, including Plaintiff, that frustrate their ability to enter Popeyes when removing such barriers has been and is readily achievable.

258.     Since January 26, 1992, Defendants failed to make a path of travel from the Parking Lot to Popeyes readily accessible to the maximum extent feasible for individuals with disabilities.

259.     Since January 26, 1992, Defendants failed to make a path of travel from the Parking Lot to Popeyes readily accessible to the maximum extent feasible for individuals with disabilities by spending up to 20% of the costs of alterations made to the primary function areas of Popeyes, and/or the Parking Lot.

260.     Since January 26, 1992, Defendants failed to make certain that the Parking Lot is readily accessible to the maximum extent feasible for individuals with disabilities.

261.     Since January 26, 1992, Defendants failed to make certain that the Parking Lot complies with the 1991 ADA Standards when it was readily achievable to do so.

262.     Since January 26, 1992, Defendants failed to make certain that the Parking Lot complies with the 2010 ADA Standards when it was readily achievable to do so.

263.     Defendants failed to bring the Parking Lot in compliance with the 1991 ADA Standards when it was readily achievable to do so.

264.      Since January 26, 1992, Defendants engaged in unlawful practices in violation of the ADA.

265.      Since January 26, 1992, Defendants engaged in unlawful practices in violation of the New York State Civil laws.

266.      Since January 26, 1992, Defendants engaged in unlawful practices in violation of the New York State Human Rights laws.

267.      Since January 26, 1992, Defendants engaged in unlawful practices in violation of the New York City Human Rights laws.

268.      Since March 15, 2012, Defendants failed to make Popeyes readily accessible to the maximum extent feasible for individuals with disabilities.

269.      Since March 15, 2012, Defendants failed to make the Parking Lot readily accessible to the maximum extent feasible for individuals with disabilities.

270.      Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the ADA.

271.      Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the New York State Civil laws.

272.      Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the New York State Human Rights laws.

273.      Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the New York City Human Rights laws.

274.      Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the ADA, the New York State Civil laws, and the New York State and City Human Rights laws.

275.     Since August 2025, through the present time, Defendants have engaged and continue to engage in unlawful practices in violation of the ADA, the New York State Civil laws, and the New York State and City Human Rights laws.

276.     Due to the architectural barriers which remain in the Parking Lot in violation of the ADA, there is no accessible path of travel for Plaintiff from the Parking Lot to visit and buy food at Popeyes that complies with the ADA requirements. As a result, Plaintiff is being discriminated against in violation of the ADA, the New York State Civil Rights laws, and the New York State and New York City Human Rights laws.

277.     At all relevant times herein, Plaintiff encountered architectural barriers to access Popeyes, which have made it difficult for him to visit and buy food at the fast-food restaurant, causing him embarrassment and frustration.

278.     Because Popeyes is a place of public accommodation, Defendants are responsible for complying with ADA 28 C.F.R. §36.304.

279.     Because Popeyes's Parking Lot is a public accommodation, Defendants are responsible for complying with ADA 28 C.F.R. §36.304.

280.     Because the Subject Facility is public accommodation, Defendants are responsible for complying with ADA 28 C.F.R. §36.304.

281.     Plaintiff has encountered architectural barriers to access Popeyes, which have greatly inconvenienced him.

282.     Popeyes violates 42 U.S.C. §12181, §12182, §12183, §12204 of the ADA, 28 C.F.R. §36.302, and §36.304.

283.     In 1991, ADA Standards for Accessible Design Title III Regulation 28 CFR Part 36 was published ("1991 Standards").

284.    The Department of Justice ("DOJ") published revised regulations for Title III of the ADA in the Federal Register on September 15, 2010. "These regulations adopted revised, enforceable accessibility standards called the 2010 ADA Standards for Accessible Design, '2010 Standards'". (See, 2010 Standards, Overview) These standards "set minimum requirements – both scoping and technical – for newly designed and constructed, or altered … public accommodation, and commercial facilities to be readily accessible to and usable by individuals with disabilities." Id. The DOJ provided that document in one publication and it includes the 2010 Standards for public accommodation and commercial facilities, which consist of Title III regulations at 28 C.F.R. Part 36, subpart D, and 2004 ADAAG at 36 C.F.R. Part 1191, appendices B and D.

285.    Defendants are discriminating against Plaintiff, because at their Subject Facility they are denying him access to, as well as full and equal enjoyment of, the goods, services, facilities, privileges, advantages, and/or accommodations of the fast-food restaurant by means of the architectural barriers, the existence of which is in violation of the ADA, including, but not limited to those listed below.

286.    At all relevant times herein, the Parking Lot is used by customers of Popeyes.

287.    At all relevant times herein, customers of Popeyes are permitted to park in the Parking Lot adjacent to Popeyes.

288.    At all relevant times herein, there are two accessible parking spaces in the Parking Lot.

289.    At all relevant times herein, there is one access aisle in the Parking Lot.

290.    At all relevant times herein, the access aisle in the Parking Lot is between the two accessible parking spaces.

291.    In this Complaint, references to the "Left" and "Right" sides are made from a point of view of a person facing the front door of Popeyes, as a car drives in.

292.    "**Signage.** Accessible parking spaces shall be designated as reserved by a sign showing the symbol of accessibility (see 4.30.7). Spaces complying with 4.1.2(5)(b) shall have an additional sign "Van-Accessible" mounted below the symbol of accessibility. Such signs shall be located so they cannot be obscured by a vehicle parked in the space." 1991 Standards §4.6.4*

293.    "**Identification.** Parking *space* identification signs shall include the International Symbol of *Accessibility* complying with 703.7.2.1. Signs identifying van parking *spaces* shall contain the designation "van accessible." Signs shall be 60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign." 2010 Standards §502.6.

294.    At all relevant times herein, there is no identification sign in the Parking Lot identifying any accessible space with an additional sign "Van-Accessible" mounted below the symbol of accessibility in violation of 1991 Standards §4.6.4*.

295.    At all relevant times herein, there is no identification sign in the Parking Lot identifying any accessible space as van-accessible in violation of 2010 Standards §502.6.

296.    "**Parking Spaces.** Accessible parking spaces shall be at least 96 in (2440 mm) wide. Parking access aisles shall be part of an accessible route to the building or facility entrance and shall comply with 4.3. Two accessible parking spaces may share a common access aisle. Parked vehicle overhangs shall not reduce the clear width of an accessible route. Parking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions." 1991 Standards §4.6.3*

297.    "**Floor or Ground Surfaces.** Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles. The exception allows sufficient slope for drainage. Built-up curb ramps are not permitted to project into access aisles and parking spaces because they would create slopes greater than 1:48." 2010 Standards §Advisory 502.4.

298.    "**Floor or Ground Surfaces.** Parking *spaces* and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking *spaces* they serve. Changes in level are not permitted. **EXCEPTION:** Slopes not steeper than 1:48 shall be permitted." 2010 Standards §502.4.

299.    Thus, parking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions." 1991 Standards §4.6.3*

300.    Thus, maximum permissible slopes of accessible parking spaces and access aisles serving them must not be steeper than 2.08%. 2010 Standards §502.4.

301.    At all relevant times herein, Defendants violated §4.6.3* of 1991 Standards.

302.    At all relevant times herein, Defendants violated 2010 Standards §Advisory 502.4.

303.    At all relevant times herein, Defendants violated §502.4 of 2010 Standards.

304.    At all relevant times herein, the Left Accessible Parking Space has a running slope of 5.9%, which is equivalent to 1:16.95, in violation of 1991 Standards §4.6.3*.

305.    At all relevant times herein, the Left Accessible Parking Space has a running slope of 5.9%, which is equivalent to 1:16.95, in violation of 2010 Standards §502.4.

306.    At all relevant times herein, the Left Accessible Parking Space has a cross slope of 4.4%, which is equivalent to 1:22.73, in violation of 1991 Standards §4.6.3*.

307.    At all relevant times herein, the Left Accessible Parking Space has a cross slope of 4.4%, which is equivalent to 1:22.73, in violation of 2010 Standards §502.4.

308.    At all relevant times herein, the Right Accessible Parking Space has a running slope of 5.7%, which is equivalent to 1:17.54, in violation of 1991 Standards §4.6.3*.

309.    At all relevant times herein, the Right Accessible Parking Space has a running slope of 5.7%, which is equivalent to 1:17.54, in violation of 2010 Standards §502.4.

310.    At all relevant times herein, the Right Accessible Parking Space has a cross slope of 5.2%, which is equivalent to 1:19.23, in violation of 1991 Standards §4.6.3*.

311.    At all relevant times herein, the Right Accessible Parking Space has a cross slope of 5.2%, which is equivalent to 1:19.23, in violation of 2010 Standards §502.4.

312.    At all relevant times herein, the access aisle has a running slope of 5.6%, which is equivalent to 1:17.86, in violation of 1991 Standards §4.6.3*.

313.    At all relevant times herein, the access aisle has a running slope of 5.6%, which is equivalent to 1:17.86, in violation of 2010 Standards §502.4.

314.    At all relevant times herein, the access aisle has a cross slope of 3.9%, which is equivalent to 1:25.64, in violation of 1991 Standards §4.6.3*.

315.    At all relevant times herein, the access aisle has a cross slope of 3.9%, which is equivalent to 1:25.64, in violation of 2010 Standards §502.4.

316.    "**General**. Floor and ground surfaces shall be stable, firm, and slip resistant and shall comply with 302." 2010 Standards §302.1.

317.    At all relevant times herein, the Left Accessible Parking Space has a ground surface that is cracked and is neither stable, nor firm, nor slip resistant, in violation of 2010 Standards §302.1.

318.     At all relevant times herein, the Right Accessible Parking Space has a ground surface that is cracked and is neither stable, nor firm, nor slip resistant, in violation of 2010 Standards §302.1.

319.     At all relevant times herein, the access aisle has a ground surface that is cracked and is neither stable, nor firm, nor slip resistant, in violation of 2010 Standards §302.1.

320.     Plaintiff intends to visit Popeyes again within six months of the filing of this Complaint, or even sooner, as soon as the barriers to access, detailed in this Complaint, are removed. The purpose of that return visit would be to be both a customer, who comes to enjoy goods and services offered at Popeyes, as well as to determine whether, and when, Popeyes has been made accessible, and to maintain standing for this lawsuit for Plaintiff's advocacy purposes, so that other disabled individuals would be able to enjoy Popeyes in the same way as able-bodied customers do, as well as to ensure that Defendants' discrimination of the disabled ends.

321.     Plaintiff intends to visit Popeyes again to enjoy the same access, the same experiences, the same goods, and the same services as are available to Defendants' able-bodied customers, as well as for advocacy purposes, but does not intend, nor has any desire whatsoever, to continue to repeatedly subject himself to Defendants' unequal treatment and blatant discrimination of him through their architectural barriers to equal access and engage in the futile gesture of attempting to patronize Popeyes, a business place of public accommodation, known to Plaintiff to have numerous and continuing pervasive architectural barriers to equal access for wheelchair users, until Defendants remediate violations at Popeyes.

322.     Plaintiff has traveled to Popeyes as a customer, as well as an independent advocate for the disabled, encountered and observed the architectural barriers to access, which are detailed in this Complaint, engaged these barriers where physically possible, suffered legal harm, legal injury, and legal damages, and will continue to suffer such harm and injury as a result of the illegal barriers to equal access present at Popeyes until the Court issues an injunction ordering Defendants to remove their architectural barriers and change their policies and procedures to make Popeyes equally accessible to all.

323.     Plaintiff will continue to suffer discrimination and injury without the immediate relief provided by the ADA, as requested herein. To remedy this discriminatory situation, Plaintiff requires an inspection of Popeyes to measure and photograph architectural barriers that are in violation of the ADA to determine the areas of non-compliance with the law.

324.     The discriminatory violations described above are not an exhaustive list of Defendants' violations of the ADA and barriers to equal access to Popeyes, because Plaintiff was unable to access and assess all areas of Popeyes due to the architectural barriers encountered. A complete list of Popeyes's ADA violations affecting Plaintiff as a wheelchair user, as well as putting in place a plan of remedial measures necessary to remove them, will require an on-site inspection by Plaintiff's representatives, pursuant to Federal Rule of Civil Procedure 34.

325.     Defendants have failed to make Popeyes accessible to Plaintiff given his disabilities. They neglected their continuing duty to review, inspect, and discover transient accessible elements, which by nature of their design or placement, frequency of usage, exposure to weather and/or other factors, are prone to shift from compliant to noncompliant, so that these elements are discovered and remediated.

326.     Defendants have failed and continue to fail to alter their inadequate maintenance practices to prevent future recurrence of noncompliance with dynamic accessible elements at Popeyes in violation of 28 CFR §36.202 and §36.211.

327.     The architectural barriers, described above, have a discriminative effect on Plaintiff, as a wheelchair user, making him unable to experience the same access to the goods, services, facilities, privileges, advantages, and accommodations of Popeyes as Defendants' able-bodied customers.

328.     At all relevant times herein, Defendants have failed to remove architectural barriers to accessibility to Popeyes in violation of 42 U.S.C. §12182(b)(2)(A)(iv).

329.     At all relevant times herein and since March 15, 2012, Defendants have altered the Parking Lot.

330.     **New construction and alterations. (a) Design and construction.** "(1) Each facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

331.     **"(2) Exception for structural impracticability.** (i) Full compliance with the requirements of this section is not required where a public entity can demonstrate that it is structurally impracticable to meet the requirements. Full compliance will be considered structurally impracticable only in those rare circumstances when the unique characteristics of terrain prevent the incorporation of accessibility features. (ii) If full compliance with this section would be structurally impracticable, compliance with this section is required

to the extent that it is not structurally impracticable. In that case, any portion of the facility that can be made accessible shall be made accessible to the extent that it is not structurally impracticable." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

332.     "**(b) Alterations.** (1) Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

333.     Upon information and belief, the Parking Lot was altered after March 15, 2012.

334.     At all relevant times herein, Defendants failed to make Popeyes, and/or the Parking Lot, readily accessible to disabled people, including Plaintiff and others who use wheelchairs.

335.     The foregoing violations by Defendants are violations of the 1991 ADAAG, and/or the 2010 ADAAG, as adopted by the U.S. Department of Justice. In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

336.     At all relevant times herein, the removal of the physical barriers, dangerous conditions, and ADA violations alleged herein has been and is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. §12182(b)(2)(A)(iv); 42 U.S.C. §12181(9); 28 C.F.R. §36.304.

337.    It is and has been readily achievable for each of Defendants to remediate the ADA violations described above as the costs of remediation do not exceed the benefits.

338.    At all relevant times herein, removal of the physical barriers, dangerous conditions, and ADA violations present at Popeyes, and/or the Parking Lot, is and has been readily achievable because of the site conditions, the structural design of the fast-food restaurant and the straightforward nature of the necessary modifications.

339.    To assist businesses in offsetting the costs associated with complying with the ADA and removing barriers to access for individuals with disabilities, §44 of the IRS Code provides a tax credit for small business owners, and §190 of the IRS Code provides a tax deduction for all business owners, including Defendants.

340.    At all relevant times herein, removal of the architectural barriers at Popeyes, and/or the Parking Lot, has been and is readily achievable because of the relative low cost of modifications to comply with the 1991 ADA Standards, and/or 2010 ADA Standards.

341.    At all relevant times herein, Defendants have had the financial resources to make the modifications, including with the financial assistance made available to Defendants by the government pursuant to §44 and/or §190 of the IRS Code.

342.    At all relevant times herein, and at the time of Plaintiff's visit to Popeyes, the Parking Lot was not accessible for individuals with disabilities in violation of 1991 ADA Standards. (Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.)

343.    At all relevant times herein, it was structurally practicable for Defendants to make Popeyes, and/or the Parking Lot, meet the requirements of 1991 ADA Standards. (Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.)

344.    At all relevant times herein, and at the time of Plaintiff's visit to Popeyes, the Popeyes, and/or the Parking Lot, were not accessible for individuals with disabilities in violation of 2010 ADA Standards.

345.    At all relevant times herein, it was structurally practicable for Defendants to make Popeyes, and/or the Parking Lot, meet the requirements of 2010 ADA Standards.

346.    At the time of Plaintiff's visit to Popeyes, the Parking Lot, and/or Popeyes were not in compliance with the accessibility standards of Title III of 1991.

347.    At the time of Plaintiff's visit to Popeyes, the Parking Lot, and/or Popeyes, were not constructed in a manner that complied with the accessibility standards of Title III of 1991.

348.    At the time of Plaintiff's visit to Popeyes, the Parking Lot, and/or Popeyes, had undergone alterations, and was not in compliance with the accessibility standards of Title III of 1991.

349.    At the time of Plaintiff's visit to Popeyes, the Parking Lot, and/or Popeyes did not comply with the accessibility standards of Title III of 1991.

350.    At the time of Plaintiff's visit to Popeyes, a primary function area of Popeyes had undergone alterations and the Subject Facility did not comply with 2010 ADA Standards.

351.    At the time of Plaintiff's visit to Popeyes, Defendants altered the Parking Lot but failed to make the Subject Facility compliant with 2010 ADA Standards.

352.    At the time of Plaintiff's visit to Popeyes, the Parking Lot, and/or Popeyes, did not comply with 2010 ADA Standards.

353.    At the time of Plaintiff's visit to Popeyes, the Parking Lot, and/or Popeyes, were not constructed in a manner that complied with 2010 ADA Standards.

354.    At the time of Plaintiff's visit to Popeyes, the Parking Lot, and/or Popeyes, had undergone alterations after March 15, 2012, and did not comply with 2010 ADA Standards.

355.    At the time of Plaintiff's visit to Popeyes, the Parking Lot, and/or Popeyes, were not maintained in a manner that complied with 2010 ADA Standards.

356.    At all relevant times herein, by continuing to maintain and/or operate Popeyes, and/or the Parking Lot, with discriminatory conditions in violation of the ADA, Defendants contribute to Plaintiff's sense of isolation and segregation and deprive him of the full and equal enjoyment of the goods, services, facilities, privileges, and accommodations available to able-bodied individuals.

357.    At all relevant times herein, Defendants have been and are required to remove existing architectural barriers to the disabled at Popeyes, and/or the Parking Lot, when such removal is readily achievable. 28 CFR 36.304(a)

358.    At all relevant times herein, as there has been an alteration to a primary function area of Defendants' place of public accommodation after January 26, 1992, each of the Defendants had a duty to and failed to ensure to the maximum extent feasible that paths of travel to Popeyes, and/or altered portions of the Parking Lot are readily accessible to and usable by individuals with disabilities, including Plaintiff and other people who use wheelchairs. 28 CFR 36.402.

359.    The Parking Lot was constructed after January 26, 1992, as defined in 28 CFR 36.401. Consequently, the Parking Lot and Defendants' Subject Facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

360.    At all relevant times herein, Defendants have failed to comply with the above mandates.

361.    At all relevant times herein, Defendants failed to make the Parking Lot "readily accessible to and usable by individuals with disabilities," even though alteration to the Parking Lot was commenced after January 26, 1992, and/or after March 15, 2012, in violation of 35.151 of 28 CFR Part 35, §35.151(b).

362.    At all relevant times herein, Defendants have violated their statutory obligation to ensure that their policies, practices, and procedures address compliance with the 2010 Standards in that they did not make reasonable accommodations for Plaintiff.

363.    At all relevant times herein, Defendants violated their obligation to remove architectural barriers to let disabled Plaintiff enjoy goods and services provided by the public accommodation under their control, thus discriminating against him.

364.    Plaintiff's requested relief serves public interest.

365.    At all relevant times herein, the architectural barriers, the removal of which was, and is, readily achievable, and other violations of the 1991 and/or 2010 ADA standards, still exist in the Parking Lot and have not been remediated, or altered, in such a way as to effectuate compliance with the provisions of the ADA.

366.    Pursuant to the ADA, 42 U.S.C. §12101, §12182, and 28 C.F.R. §36.304, Defendants were required to make Popeyes readily accessible to persons with disabilities.

367.    Pursuant to the ADA, 42 U.S.C. §12101, §12182, and 28 C.F.R. §36.304, Defendants were required to make the Parking Lot readily accessible to persons with disabilities.

368.    Defendants did not remove architectural barriers for disabled individuals at the Subject Facility by January 26, 1992. To date, they have failed to comply with that mandate.

369.    At all relevant times herein, Defendants' failure to remove architectural barriers, which frustrate access for disabled individuals, constitutes a pattern and practice of intentional disability discrimination and is subject to enforcement under 42 U.S.C. §12188 and 28 C.F.R. §503.

370.    At all relevant times herein, it was not structurally impracticable for Defendants to make Popeyes accessible.

371.    At all relevant times herein, it was not structurally impracticable for Defendants to make the Parking Lot accessible.

372.    At all relevant times herein, it was not structurally impracticable for Defendants to make the Subject Facility accessible.

373.    At all relevant times herein, removal of all architectural barriers existing at the Parking Lot was, and is, readily achievable by Defendants.

374.    At all relevant times herein, accommodations to Plaintiff and removal of the architectural barriers for individuals with disabilities at the Parking Lot by Defendants are readily achievable, would not impose an undue hardship on them and would not fundamentally alter the nature of their program, activity, or nature of the business.

375.    Plaintiff intends to return to Popeyes and has a realistic, credible, existing, and continuing threat of discrimination from Defendants' non-compliance with the ADA in connection with the Subject Facility.

376.    At all relevant times herein, Defendants' failure to make the Parking Lot accessible denied Plaintiff an equal opportunity to participate in, or to benefit from, services, or accommodations, because of his disability.

377.     The effect of the practices complained of has been to deprive Plaintiff of the full and equal enjoyment of Popeyes and to otherwise adversely affect his status as a member of the public interested in accessing the place of public accommodation owned, leased, leased to, constructed, maintained, managed and/or operated by Defendants.

378.     At all relevant times herein, the Parking Lot is not accessible to, or readily usable by, individuals with disabilities.

379.     Pursuant to 42 U.S.C. §12188, this Court was vested with the authority to grant Plaintiff injunctive relief, including an order to alter the Parking Lot, to make it accessible to, and useable by, Plaintiff to the extent required by the ADA, as well as close Popeyes until the required modifications are completed.

380.     Defendants' flagrant disregard for the ADA, and the New York laws, which obligate them to make all readily achievable accommodations and modifications to remove architectural barriers to access and use of Popeyes is legally inexcusable.

381.     Allowing Defendants to deleteriously detrimentally prolong their practices would encourage them to continue to blatantly disregard the ADA, the New York State Civil laws, and the New York State and City Human Rights laws, and discriminate against Plaintiff.

382.     The inexcusability of Defendants' actions is exacerbated by the fact that over 30 years have passed since the effective date of Title III of the ADA. During that time, they operated at a profit, should have accumulated sufficient funds to make alterations and had numerous opportunities to remove the architectural barriers and end discrimination, but did not do so.

383.     At all relevant times herein, by not removing the architectural barriers, which barred Plaintiff's access, inconvenienced, embarrassed, and humiliated him, Defendants

gave a crystal-clear message to Plaintiff that his patronage is neither needed, desired, welcomed, or wanted.

## SECOND CAUSE OF ACTION

### Violations of the New York State Human Rights Laws

384.     Plaintiff re-alleges, and incorporates, by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

385.     The New York State Human Rights Law, in relevant part, provides the following:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of … disability … .

> NYS Executive Law §296(2)(a)

386.     The Subject Facility is a place of public accommodation, as defined in New York State Human Rights Law §292(9).

387.    Defendants have further violated the New York State Human Rights Law by being in violation of the rights provided under the ADA.

388.    Defendants are in violation of the New York State Human Rights Law by denying Plaintiff full and safe access to the benefits, accommodations, and services of the Subject Facility.

389.    Defendants do not provide Plaintiff with equal opportunity to use their public accommodation.

390.    Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law §296(2)(c)(iii).

391.    Defendants have not provided Plaintiff with evenhanded treatment in violation of New York State Human Rights Law §296.

392.    Defendants' unequal treatment of Plaintiff was demonstrated when he was discriminated against.

393.    Defendants have, because of Plaintiff's disability, directly, or indirectly, refused, withheld from, or denied him the accommodation, advantages, facilities, or privileges of their public accommodation.

394.    Defendants have demonstrated that Plaintiff's patronage is unwelcome, unwanted, unneeded, undesirable, and unacceptable.

395.    In violation of the New York State Human Rights Law, Defendants have discriminated against Plaintiff.

396.    Plaintiff demands compensatory damages from Defendants in the amount of $1,000 under the New York State Human Rights Law, NY CLS Exec §297(9).

## THIRD CAUSE OF ACTION

### Violations of the New York State Civil Rights Laws

397.     Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

398.     Defendants have violated Plaintiff's civil rights because of his disability.

399.     Plaintiff is entitled to recover the penalty prescribed by New York State Civil Rights Law §40-c and §40-d, in the amount of $500 for each violation from Defendants.

400.     Notice of this action is being served upon the attorney general, as required by New York Civil Rights Law, §40-d, in accordance with the statute.

401.     A copy of this Complaint is being served upon the attorney general by the United States mail, first class mail, postage prepaid.

## FOURTH CAUSE OF ACTION

### Violations of the New York City Human Rights Law

402.     Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

403.     The New York City Human Rights Law, in relevant part, provides the below.

It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation:

1. Because of any person's actual or perceived … disability …, directly or indirectly:

(a) to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation;

NYC Admin. Code §8-107(4)

404.    Defendants have not reasonably accommodated Plaintiff in violation of New York City's Administrative Code §8-102(4), (16), (17), (18), §8-107(4) and §8-107(15).

405.    In violation of the New York City Administrative Code, Defendants have unlawfully discriminated against Plaintiff.

406.    Reasonable accommodation and modifications are necessary to enable Plaintiff to enjoy non-restricted access and use of Defendants' Subject Facility.

407.    In violation of the New York City Administrative Code the owners, operators, lessees, proprietors, managers, agents and/or employees of the Subject Facility have, because of the actual, or perceived, disability of Plaintiff directly, or indirectly, refused, withheld from, and denied him the accommodations, advantages, facilities, or privileges thereof.

408.    In violation of the New York City Administrative Code, on the basis of Plaintiff's disability, Defendants have demonstrated that Plaintiff's patronage is unwelcome, unacceptable, and objectionable.

409.    Defendants are in violation of the New York City Human Rights Law by denying Plaintiff full and safe access to the benefits, accommodations, and services of the Subject Facility.

410.    Pursuant to New York City Human Rights Law §8-502(c), notice of this action is being served upon the New York City Commission on Human Rights in accordance with the statute.

411.    A copy of this Complaint is being served upon the New York City Commission on Human Rights by United States mail, first class mail, postage prepaid.

412.    Plaintiff demands compensatory damages in the amount of $1,000 from Defendants under the New York City Human Rights Law, NYC Admin. Code §8-125.

## ATTORNEY'S FEES AND COSTS

413.    Plaintiff had to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorney's fees, including litigation expenses, and costs, including expert fees, paid by Defendants, pursuant to the ADA, 28 C.F.R. §36.505, and New York Executive Law §297(10). Furthermore, pursuant to the New York City Human Rights Law, the Court may award the prevailing party reasonable attorney's fees. Under that law's definition "prevailing" includes a plaintiff, whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant. NYCHRL, in pertinent part, states the below.

> In any civil action commenced pursuant to this section, the Court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs. For

the purposes of this subdivision, the term "prevailing"

includes a Plaintiff whose commencement of litigation has

acted as a catalyst to effect policy change on the part of the

defendant, regardless of whether that change has been

implemented voluntarily, as a result of a settlement or as a

result of a judgment in such Plaintiff's favor. The Court shall

apply the hourly rate charged by attorneys of similar skill

and experience litigating similar cases in New York County

when it chooses to factor the hourly rate into the attorney's

fee award.

NYC Admin. Code §8-502(g)

## COMPENSATORY AND STATUTORY MONETARY DAMAGES

414.    Plaintiff demands compensatory damages in the amount of $1,000 from Defendants

under the New York State Human Rights Law, NY CLS Exec §297(9) and the New York

City Human Rights Law, NYC Admin. Code §8-125.

In calculating compensatory damages under the NYSHRL

and the NYCHRL, a Court in the Southern District of New

York just a few months ago found relevant the fact that '[t]he

New York City Human Rights Commission has deemed

awards of $1,000 to be sufficient in cases where

complainants did not establish any particular damage 'other

than what a decent and reasonable individual would suffer when faced with such ignorant behavior.'

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429, (quoting and adapting Kreisler, 2012 WL 3961304, at *14)

415.    Plaintiff requests statutory monetary damages in the sum of $500 from Defendants to compensate him for their violation of New York Civil Rights Law §40-c and §40-d.

New York Civil Rights Law §40-c holds that *any person* [emphasis added] who shall violate any of the provisions of New York Civil Rights Law §40-d 'shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any Court of competent jurisdiction in the county in which the defendant shall reside. … [T]his Court has the authority to order Defendant to pay Plaintiff the $500 in statutory damages contemplated by the New York Civil Rights Law for the disability discrimination Plaintiff has suffered….

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429

416.    The reason Plaintiff requests $500 from Defendants, and not a lower amount envisioned by the statutes, is due to the high number and extent of the violations, which were alleged in detail in this Complaint. Furthermore, the number of violations may be

even greater, and they may be even more extensive than those alleged here, and it is likely that they will be revealed upon inspection of the Subject Facility by an expert.

**INJUNCTIVE RELIEF**

417.     Pursuant to 42 U.S.C. §12188 this Court is vested with the authority to grant Plaintiff injunctive relief, including an order to alter the Subject Facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, the New York State Civil Rights Law, the New York State Human Rights Law, the New York City Human Rights Law, and close the Subject Facility until requisite modifications are completed.

418.     Plaintiff requests the Court to issue a permanent injunction enjoining Defendants from disability discrimination.

419.     Plaintiff requests the Court to issue a permanent injunction and order Defendants to alter their Subject Facility to make it readily accessible to and usable by individuals with disabilities. To achieve that, Plaintiff requests the Court to adopt relief ordered in Shariff v. Alsaydi, 2013 WL 4432218. Plaintiff requests the Court to order Defendants to prepare architectural plans remedying the violations of the 2010 Standards and to provide Plaintiff's counsel with those plans for review within 60 days of the Court's order. Plaintiff also requests that the injunction provides him with 30 days to file a motion seeking relief should Defendants' proposed architectural plans be inadequate to remedy the 2010 Standards violations specified in this Complaint. Plaintiff further requests that the injunction requires Defendants to implement architectural plans and remedy the violations

within 60 days of either Plaintiff's agreement, or a ruling by the Court stating that the plans are adequate.

420.    Plaintiff requests the Court to issue a permanent injunction requiring Defendants to make all necessary modifications to Defendants' policies, practices, and procedures, so that Plaintiff would not be subject to further unlawful discrimination.

## DECLARATORY RELIEF

421.    Plaintiff is entitled to declaratory relief for the violations committed by Defendants, specifying the rights of Plaintiff as to the removal of the architectural barriers from the Subject Facility by Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby respectfully demands judgment against Defendants, jointly and severally, and requests that this Court:

A.     Grant a permanent injunction

     i.)  Enjoining Defendants, their officers, management personnel, employees, agents, successors and assigns from engaging in discrimination based on disability;

     ii.) Requiring Defendants to alter their Subject Facility to make it readily accessible to, and usable for, Plaintiff and other individuals with disabilities;

     iii.) Compelling Defendants to make all necessary modifications to their policies, practices and procedures, so that Plaintiff would not be subject to further discrimination;

     iv.) Ordering Defendants to provide auxiliary aids, or services, or to modify their policies, or procedures, or provide an alternative method, so that Plaintiff, and other disabled individuals, would be able to obtain the full and equal enjoyment of the Subject Facility owned, operated, maintained, or leased, by Defendants, in accordance with Title III of the ADA, the New York State Civil Rights Laws, and the New York State and City Human Rights Laws; and

     v.)  Ordering Defendants to make the Subject Facility readily accessible to and usable by Plaintiff and other individuals with disabilities.

     vi.) Ordering the issuance of an injunction that requires Defendants

          i.   to prepare architectural plans remedying the ADA violations described in the Complaint, and

          ii.   to provide Plaintiff's counsel with those plans for review within 60 days of the Court's Order.

vii.)      Ordering that the injunction affords Plaintiff 30 days to file a motion seeking relief on the basis that Defendants' proposed architectural plans are inadequate to remedy the ADA violations specified in the Complaint; and

viii.)      Ordering that the injunction requires Defendants to implement the architectural plans and remedy the violations within 60 days of either Plaintiff's agreement or a ruling by the Court that the plans are adequate.

B.    Enter declaratory judgment specifying Defendants' violations of the ADA, the New York State Civil laws, the New York State and City Human Rights laws, and declare the rights of Plaintiff as to Defendants' policies, procedures, facilities, goods and services offered to the public;

C.    Enter declaratory judgment specifying that the Subject Facility owned, operated, leased, controlled, maintained and/or administered by Defendants violates the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

D.    Enter an order requiring Defendants to alter their Subject Facility and amenities to make them accessible to, and usable by, Plaintiff and other individuals with disabilities to the full extent required by Title III of the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

E.    Hold Defendants liable for $500 in statutory monetary damages for their violations and award that sum to Plaintiff pursuant to the New York State Civil Rights Laws §40-c and §40-d;

F.   Hold Defendants liable for compensatory damages in the amount of $1,000 under the New York State and City Human Rights laws.

G.   Retain its jurisdiction over Defendants until their unlawful practices, acts, and omissions no longer exist;

H.   Find that Plaintiff is a prevailing party in this litigation.

I.   Award attorney's fees, expert fees, costs, expenses, and interest together with such other and further relief at law, or in equity, to which Plaintiff may be entitled; and

J.   Award such other and further relief as it deems necessary, just, and proper.

## **<u>JURY DEMANDED</u>**

Plaintiff demands a trial by jury of all the issues of fact and damages.

September 3, 2025

Respectfully submitted,

<u>s:/Daniel Berke</u>
Daniel Berke (db1855)

Daniel Berke (db1855)
Berke & Associates PLLC
203 East 72nd Street, Suite 6A
New York, NY 10021
Tel: (917) 747-4263
Email: danberke100@gmail.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on September 3, 2025, I filed the foregoing Complaint with the Court via CM/ECF, which caused notice to be served upon all e-filing attorneys of record. In addition, I also mailed copies of the foregoing Complaint by the United States mail, first class mail, postage prepaid, to the Civil Rights Bureau and the New York City Commission on Human Rights at the following addresses: Civil Rights Bureau, 28 Liberty Street, New York, NY 10005; and Damion K. L. Stodola, General Counsel, NYC Commission on Human Rights, 22 Reade Street, 2nd Floor, New York, NY 10007.

September 3, 2025

Respectfully submitted,

s:/Daniel Berke
Daniel Berke (db1855)

Daniel Berke (db1855)
Berke & Associates PLLC
203 East 72nd Street, Suite 6A
New York, NY 10021
Tel: (917) 747-4263
Email: danberke100@gmail.com
*Attorney for Plaintiff*